IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

VALLEY VIEW ANGUS RANCH, an        )
  Oklahoma corporation, and OTIS     )
  CULPEPPER,                         )
                                   )
         Plaintiffs,                )
                                   )
vs.                                )    NO. CIV-04-191-D
                                   )
DUKE ENERGY FIELD SERVICES, LP.,   )
                                   )
         Defendant.                 )

<u>ORDER</u>

Before the Court are the parties' motions to exclude all or part of the testimony of the expert witnesses who will testify in this case. Plaintiffs filed a motion [Doc. No. 48 ], a supplemental motion [Doc. No. 87], and a second supplemental motion [Doc. No. 167] to exclude the testimony of A. Joseph Reed. By a separate motion [Doc. No. 51], Plaintiffs challenge the testimony of Kim Allen. Defendant filed a motion [Doc. No. 45] and a supplemental motion [Doc. No. 168] to exclude the testimony of Jerry Black and Dr. Robert C. Knox . Defendant also moved to exclude the testimony of Jim Artman [Doc. No. 44 ]. In addition, Plaintiffs have filed a motion [Doc. No. 159] to strike David B. Vance as an expert witness.

<u>I. Background:</u>

Plaintiffs' claims are based on injury to property, including soil and groundwater, resulting from a leak in a gas pipeline operated by Defendant. Valley View seeks damages based on the injury to the property as well as punitive damages; Culpepper seeks damages for his loss of the use and enjoyment of the property. Defendant does not dispute that the leak of hydrocarbons occurred. However, it contends that it took immediate corrective action, that Plaintiffs have exaggerated the

extent of the damage and the work required to clean up the property, and that Plaintiffs failed to mitigate their damages.   Defendant also contends that its conduct does not warrant consideration of punitive damages.

The parties' expert witnesses offer testimony regarding the nature and extent of the soil and groundwater contamination resulting from the leak, the remedial actions taken to date, the need or lack thereof for additional remediation, and the associated costs.   In addition, the parties have engaged real estate appraisers to offer expert opinions regarding the effect of the leak on the value of the property.

The expert witnesses' opinions have been affected by the procedural history of this case. The original deadline for identifying expert witnesses and submitting their reports was April 4, 2005.  The parties complied with that deadline, timely deposed the experts, and filed motions in limine.  Before rulings were issued on those motions, the Court granted Defendant's motion for summary judgment; in 2007, that ruling was reversed by the Tenth Circuit Court of Appeals, and the case was remanded.   In the interim, no action was taken in this case.  Following remand, the Court conducted a status conference.  At the conference, the parties requested leave to supplement their expert witness reports after the experts reviewed and evaluated recent tests and data obtained since 2005.  The Court agreed, and the parties then filed supplemental motions addressing the supplemental reports.

Although the motions focus primarily on the admissibility of expert testimony based on the expert's qualifications to express a specific opinion or the reliability of that opinion, some motions raise challenges based on Rules 26 or 37 of the Federal Rules of Civil Procedure.   On May 29,

2008 the Court conducted a hearing on the motions.  Having now reviewed the extensive briefs as well as the witnesses' reports and supplemental reports, and having considered the testimony and argument presented at the hearing, the Court issues this order.

II.  Rule 702 and *Daubert*:

The parties agree that Rule 702 of the Federal Rules of Evidence allows expert testimony if the witness is qualified "by knowledge, skill experience, training, or education" and the proposed testimony would be helpful to the trier of fact, and is based upon sufficient facts or data, is the product of reliable principles and methods, and "the witness has applied the principles and methods reliably to the facts of the case."  Fed. R. Evid. 702.  Pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U. S. 579, 592 (1993), the Court must, prior to admitting expert testimony, determine that the proposed testimony satisfies the requirements of Rule 702 in that it is reliable and relevant.

To be reliable, the testimony or evidence must be based on "scientific" knowledge, which is defined as that which is grounded in the methods and procedures of science or "derived by the scientific method." *Daubert*, 509 U.S. at 590.  Although *Daubert* sets out certain non-exclusive factors to apply when considering scientific expert testimony[1], the court has broad discretion to determine the applicability of those factors. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).  The required inquiry is flexible and does not necessarily mandate application of all factors announced in *Daubert.  Id.* at 149; *Goebel v. Denver and Rio Grande Western Railroad Co.*, 346

---

[1] *According to Daubert, the trial court should consider: 1) whether the theory or technique used by the expert can be or has been tested; 2) whether the theory or technique has been subjected to peer review and publication; 3) the known or potential rate of error of the technique or method; and 4) whether the theory or technique has obtained general acceptance within the scientific community.  509 U.S. at 593-94.*

F.3d 987, 991-92 (10th Cir. 2003).   Further, expert testimony may be based on technical, as opposed

to scientific, knowledge.   Fed. R. Evid. 702; *Kumho Tire,* 526 U.S. at 147.

Rule 702 also requires that the testimony be relevant to the issues presented.   To be relevant,

the opinion must be such that it  will assist the trier of fact in understanding the evidence.   *Kumho*

*Tire*, 526 U.S. at 141.

The proponent of expert evidence carries the burden of establishing its admissibility by a

preponderance of the evidence.   *Moore v. Ashland Chem., Inc.,* 151 F.3d 269, 276 (5th Cir. 1998);

*Hollander v. Sandoz Pharmaceuticals Corp.*, 95 F. Supp. 2d 1230, 1236 n.8 (W.D. Okla.

2000)(*citations omitted)*.   To satisfy that burden, the proponent  "need not prove that the expert is

undisputably correct or that the expert's theory is 'generally accepted' in the scientific community."

*Goebel*, 346 F.3d at 991, *quoting Mitchell v. Gencorp, Inc.,* 165 F.3d 778, 781 (10th Cir.1999).

Instead, it "must show that the method employed by the expert in reaching the conclusion is

scientifically sound and that the opinion is based on facts that satisfy Rule 702's reliability

requirements," by establishing that the opinion has been developed in a scientifically sound and

methodologically reliable fashion.   *Id.*

### III.  Plaintiffs' motions to exclude the testimony of A. Joseph Reed:

In their three motions challenging the admissibility of A. Joseph Reed's testimony, Plaintiffs

challenge his qualifications to offer certain opinions and argue that his supplemental report is

procedurally deficient.   Reed  is a hydrologist and a certified geologist, with a bachelor's degree

in environmental hydrology and a master's degree in watershed management.   For nearly 40 years,

he has been a consultant involved in the  remediation of contaminated soil and/or groundwater.   In

April 2005, Reed prepared an initial expert report; he also submitted a June 2005 supplemental report  and a second supplemental report in April, 2008.

A. Initial report and motion:

In general, Reed's initial report concluded  that the damage to the soil and groundwater at issue in this case is capable of remediation, that Defendant had begun remediation work, and that the Plaintiffs' expert witnesses  overestimated the work and associated costs required to clean up the property.   In challenging the admissibility of the initial report and related testimony,  Plaintiffs do not challenge Reed's qualifications, but instead argue that the report and opinion fail to satisfy *Daubert*  because: 1) Reed does not propose a specific remediation  plan; 2) his opinions regarding remediation are  based on the expectation that Defendant will take action, and that expectation is too speculative to be admissible; 3) Reed's criticism of the remediation cost estimates of Plaintiffs' expert is improper because he did not prepare his own cost estimates; and 4) the expert report does not satisfy Fed. R. Civ. P. 26(a)(2) because Reed did not attach his trial exhibits.

Defendant responded to each of these arguments in its response brief.   At the May 29 hearing, these issues were not directly addressed by the parties.   However, Plaintiffs have not withdrawn their objections, and their supplemental briefs indicate that they continue to assert these arguments.

To the extent that Plaintiffs' objections to Reed's initial report  have not been rendered moot by his subsequent  reports, the Court finds those objections  insufficient to warrant exclusion of Reed's testimony pursuant to *Daubert* or Rule 26(a)(2).  In challenging Reed's failure to submit a cleanup plan, Plaintiffs argue that this failure renders his opinions unreliable.  However, Plaintiffs

5

do not challenge Reed's methodology.   The absence of a specific remediation plan does not render the opinions reflected in Reed's report unreliable; as Defendant points out, Reed's opinion is based on his view that, according to the information available prior to April 2005, a remediation plan was not required because Defendant had already initiated cleanup activities.   Plaintiffs contend those actions were inadequate, and they submit expert opinions to support that contention.   However, the fact that Plaintiffs challenge the propriety of the cleanup efforts undertaken by Defendant at the time Reed's initial expert report was prepared does not compel a conclusion that Reed's contrary opinion is inadmissible.   Similarly, the fact that Reed criticizes Plaintiffs' cleanup cost estimate and did not prepare his own cost estimate does not require exclusion of his report or his opinion; as Defendant points out, Reed relied instead on his belief that the additional costs outlined by Plaintiffs' expert were unnecessary because Defendant's actions were adequate.   For the same reason, Reed's suggestion that Defendant would continue to engage in cleanup activities is not too speculative to warrant its exclusion under Rule 702.

The Court concludes that these challenges to Reed's initial report are directed at the weight and sufficiency of the report rather than its admissibility.   Where an opposing party asserts perceived weaknesses in an expert's opinion, the testimony is nevertheless admissible and should instead be the subject of cross-examination.   *Hertz Corporation v. Gaddis-Walker Electric., Inc.*, 1997 WL 606800 (10th Cir. 1997), *citing Firestone Tire & Rubber Co. v. Pearson*, 769 F.2d 1471, 1482-83 (10th Cir. 1985).   In such cases, "the burden is on opposing counsel through cross-examination to explore and expose any weaknesses in the underpinnings of the expert's opinion." *Robinson v. Missouri Pacific RR Co.*, 16 F.3d 1083, 1090 (10th Cir. 1994).

With respect to Plaintiffs' contention that Reed's report fails to comply with Fed. R. Civ. P. 26(a)(2) because he does not attach copies of the actual trial exhibits he intends to introduce, the Court finds that contention does not warrant the exclusion of the report.   As Defendant points out, Reed included a description of the exhibits he anticipated preparing for trial, and subsequently provided copies of exhibits with a supplemental report.  The Scheduling Order in this case provided for the exchange of  final trial exhibits, and it appears that the required exchange has taken place. The authorities cited by Plaintiffs do not compel a contrary result.

In accordance with the foregoing, the Plaintiffs' Motion in Limine [Doc. No. 48 ] is denied.

B. Supplemental and second supplemental reports and motions:

Following additional testing of the soil in May 2005, Reed submitted a supplemental report; he presented a copy of the two-page report to counsel for Plaintiffs on the morning of his deposition. In that report, Reed addressed the recent test results and expanded his conclusions to include the opinion that, in addition to the actions taken by Defendant, the cleanup of the property would be enhanced by the process of bioremediation.  Also included  in that report is a summary of the cleanup activities conducted by Defendant as of May 2005 and the costs incurred.   Plaintiffs filed a supplemental motion [Doc. No. 87] seeking exclusion of this report because:  1) it was not timely submitted; 2) Reed is not qualified to opine on the subject of bioremediation; 3) copies of demonstrative exhibits  submitted with the report cannot be introduced through Reed; and 4) Reed is not qualified to testify about the costs of cleanup.

Reed's second supplemental report was submitted in April 2008, and concludes  that the more recent soil test results show that the process of bioremediation has occurred.  Plaintiffs have

moved to exclude that report and the related testimony [Doc. No. 167], again arguing that Reed is not qualified to testify on the subject of bioremediation.

Plaintiffs' challenge to the timeliness of the supplemental report is based on the fact that it was not provided until the day of Reed's deposition; they contend that the delay in providing it was prejudicial to Plaintiffs.  In response, Defendant notes that Reed stated in his initial report that he would supplement his opinion when additional test results were available and argues that the supplemental report is designed to address those results.   As Defendant also notes, an expert's supplemental disclosures are governed  by Fed. R. Civ. P. 26(e)(1), which references Fed. R. Civ. P. 26(a)(3) which, in turn, requires supplemental disclosures no later than 30 days before trial.  At the time of Reed's June 5 deposition, the trial of this action was scheduled to commence on July 11, 2005, and the June 5 disclosure was more than 30 days in advance of trial.  Defendant also contends that the supplemental report was not  prejudicial to Plaintiffs because it consisted of only two pages; Reed also provided his entire file to Plaintiffs' counsel, and the deposition was recessed to give counsel an opportunity to review the supplemental report and file.  Defendant also notes that Plaintiffs did not object or seek to reschedule the deposition[2], and did not file the supplemental motion until almost  two months after receiving the supplemental report.

Although the Court agrees that the supplemental report should have been provided to Plaintiffs earlier, the Court also agrees that any resulting prejudice to Plaintiffs could have been addressed in a request to postpone the deposition and extend discovery because of the belated submission of the report.   Furthermore, Defendant is correct in noting that the supplemental report

---

[2]*The deposition was scheduled for the final day of discovery; however, Defendant notes that Plaintiffs did not seek an extension of time or discuss rescheduling the deposition at the time it was taken.*

was submitted more than 30 days before the trial date.  Therefore, Plaintiffs' request to exclude the report as untimely is denied.

The Court also rejects Plaintiffs' contention that Reed is not qualified to present testimony regarding the work performed by Defendant and the resulting costs.  According to his testimony at the May 29 hearing, many of the costs incurred were based on work performed by his company, Arcadis, and he has knowledge regarding those costs.  Although he is not an accountant and cannot offer testimony regarding accounting matters, he has experience in numerous projects involving remediation and is familiar with the type of work involved as well as the related expenses.   He cannot, of course, testify regarding all expenses incurred by Defendant, as he would not have a factual basis for such testimony.  Instead, Defendant may introduce that testimony through an employee having knowledge of the expenses incurred.  The Court does not regard such testimony as expert testimony, and the parties have not suggested otherwise.  Accordingly, the Plaintiffs' motion in this regard is denied in part and granted in part.

The primary focus of the Plaintiffs' objection to both the supplemental and second supplemental report is the argument that Reed is not qualified to opine on the subject of bioremediation.   Pursuant to *Daubert*, the Court must determine whether the expert witness is qualified to express an opinion on the subject matter of his testimony.  509 U.S. at 588-89.   An expert may be qualified as an expert by "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. Plaintiffs challenge Reed's qualifications to testify about bioremediation because he admittedly does not have a degree in biochemistry or a related field.   Because expert qualifications are not, however, limited to education in the field but may be based on the witness's experience,

Reed's lack of a degree in biochemistry does not necessarily render him unqualified to testify about bioremediation.  The question is whether he has gained sufficient knowledge through his experience and training to satisfy the requirements of Fed. R. Evid. 702.

At the May 29 hearing, Reed testified that he has almost 40 years of experience as a consultant involved in the remediation or cleanup of contaminants in soil and water.  His company, Arcadis, is comprised of employees having varying educational backgrounds.  Reed testified that, although he does not have degrees in chemistry or biology and does not purport to be  an expert in biochemistry,  other Arcadis employees have formal education in these fields.  According to Reed, when Arcadis consults on remediation projects, it utilizes the formal educational background and expertise of its staff in proposing and developing the projects.  Reed also testified that Arcadis has provided consulting services on many projects in which soil or water has been contaminated by pollutants, including hydrocarbons.    According to Reed, he has personally been involved in a number of cleanup projects where the process of bioremediation successfully contributed to the cleanup of the soil or water.  He identified approximately six projects in which he has personally observed the effects of  bioremediation.

Reed also testified, however, that he does not consider himself qualified to opine in detail about the biochemistry involved in the process.  Instead, he relies on colleagues who have the necessary educational background; he consults with his colleagues and obtains their input in this regard.  Based on his personal experience, however, he considers himself knowledgeable in the process in general and qualified to explain that it does occur, the general manner in which it occurs, and the impact on remediation.    At the hearing, Reed explained the general process of

bioremediation as well as his opinion that, based on his observations and analysis of the tests performed on the property at issue, bioremediation is occurring at the subject property and has enhanced the removal of the pollutants in the soil and groundwater.

The Court concludes that, based on his experience as a consultant in the remediation of soil and groundwater pollution, Reed has obtained sufficient expertise to qualify him to offer an opinion that the process of bioremediation can enhance cleanup of contaminants, and that he recognizes its operation regarding the property involved in this case. The testimony at the hearing offered by both Defendant and by Plaintiffs' own experts establishes that bioremediation is a process recognized by experts in the field, although they may disagree regarding its impact as a general rule or as it applies to the facts of this case. As a result, the theory is sufficiently reliable to permit its presentation in this case.

Furthermore, Reed may rely to some extent on hearsay evidence in presenting his testimony. An expert may testify about the underlying basis for his opinion, even if that basis consists of hearsay evidence, if it is evidence typically relied upon by experts in the field. "Indeed, the view of this circuit has been that when an expert testifies about such a statement, it is offered not for the truth of the statement but to show how the expert arrived at the opinion, and therefore is not considered hearsay." *Richie v. Mullin*, 417 F.3d 1117, 1125 (10th Cir. 2005), *citing Wilson v. Merrell Dow Pharm., Inc.*, 893 F.2d 1149, 1153 (10th Cir.1990). According to the Court in *Wilson*:

> Federal Rule of Evidence 703 allows an expert witness to base his testimony upon facts or data that are hearsay, provided that those facts or data are 'of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject.' We have interpreted Rule 703 as allowing an expert to reveal the basis of his testimony during direct examination, even if this basis is hearsay, provided that the facts or data underlying his conclusions are of a type reasonably relied upon by others in his field of expertise. The hearsay is admitted for the limited purpose of informing the jury of the basis of the expert's opinion and not

for proving the truth of the matter asserted.

*Wilson*, 893 F.2d at 1153, *citing United States v. Affleck*, 776 F.2d 1451, 1457-58 (10th Cir. 1985). To the extent that Reed's general opinion regarding bioremediation is based on the analysis of his colleagues and information they provided to him, his opinion is thus admissible so long as it satisfies Rule 703.   Such information is admissible for the "purpose of assisting the jury in evaluating an expert's opinion," but **"** the underlying information is not admissible simply because the opinion or inference is admitted**."**  Advisory Committee Notes, Rule 703.  Further, the notes provide that:

> When information is reasonably relied upon by an expert and yet is admissible only for the purpose of assisting the jury in evaluating an expert's opinion, a trial court applying this Rule must consider the information's probative value in assisting the jury to weigh the expert's opinion on the one hand, and the risk of prejudice resulting from the jury's potential misuse of the information for substantive purposes on the other.  The information may be disclosed to the jury, upon objection, only if the trial court finds that the probative value of the information in assisting the jury to evaluate the expert's opinion substantially outweighs its prejudicial effect.

Advisory Committee Notes, Rule 703. If the information is admitted "under this balancing test, the trial judge must give a limiting instruction upon request, informing the jury that the underlying information must not be used for substantive purposes."  *Id.*  "In determining the appropriate course the trial court should consider the probable effectiveness or lack of effectiveness of a limiting instruction under the particular circumstances."  Advisory Committee Notes, Rule 703.

With respect to the admissibility of demonstrative exhibits consisting of diagrams reflecting the process of bioremediation, Plaintiffs' challenge to the admissibility of this evidence is based on the fact that Reed did not prepare these exhibits.  However, in his testimony at the hearing, Reed stated that he obtained these diagrams from his colleagues and that they depict, in general, the process of bioremediation.  He testified that they were not prepared for this litigation and are not

designed to show what has occurred on Plaintiffs' property; instead, they are illustrative exhibits designed to assist the jury in understanding the bioremediation process.

Diagrams and other demonstrative exhibits may be presented by an expert witness who has not prepared the same so long as such exhibits are presented for illustrative or demonstrative purposes only, do not purport to depict what actually occurred in the case at issue, and the jury is expressly told that the depicted information is presented for the limited purpose of illustration. *See, e.g., Pandit v. American Honda Motor Co., Inc.*, 82 F.3d 376, 381 (10th Cir. 1996); *Brandt v. French*, 638 F.2d 209, 212 (10th Cir. 1981).   Based on the record, the Court concludes that Reed may utilize the diagrams as tools to illustrate the bioremediation process.  The jury will be advised, upon request, that the diagrams do not purport to show what occurred in this case, but are presented only to generally explain and illustrate the process of bioremediation.

The Court concludes that, while Reed is qualified by his experience and direct involvement in remediation efforts which have included  bioremediation, he may opine in general that such process occurs and that, based on his review of the test data, he believes the process has occurred in this case.  He may utilize the diagrams at issue to generally explain the process.   However, Reed is admittedly not qualified to explain in detail to the jury the chemical processes which take place during bioremediation and precisely how the process acts to eliminate hydrocarbons in the soil.  That explanation requires chemical and biological expertise which he admits is beyond the scope of his knowledge.  Accordingly,  to the extent Plaintiffs' motions [Doc. Nos. 87 and 167] seek exclusion of any testimony by Reed regarding the process of bioremediation in general, their motions are denied. To the extent that Plaintiffs challenge his qualifications to explain the underlying chemical

and biological processes to the jury in detail, their motions are granted.

IV.  Defendant's motions to exclude the testimony of Jerry Black and Dr. Robert Knox:

Plaintiffs have offered two witnesses, Jerry Black and Dr. Robert Knox,  to provide expert testimony regarding the nature and extent of the damage caused to the soil and groundwater at the property as well as the work required to remediate the damage and the cost of that work.  Defendant has filed a joint motion objecting to the initial reports of each expert [Doc. No. 45] and a supplemental motion [Doc. No. 168] again challenging the admissibility of the opinions reflected in the experts' recent supplemental reports.

A.  Initial Motion:

1) Jerry Black:

In his initial report, Jerry Black concluded that the contamination of the soil and groundwater was more extensive than suggested by Defendant; he criticized Defendant's cleanup work as deficient.  He also  stated that, during its initial excavation of the area, Defendant failed to remove all contaminated soil and, in fact, re-filled some of the excavation site with contaminated soil. As a result, he concluded that soil and groundwater continued to be contaminated and would require extensive remediation.    He also opined that Defendant should have been aware of the leak long before its discovery and that it did not properly inspect the site of its pipeline gathering system. He further states that certain substances leaked into the soil pose a health risk to humans.  He developed a cleanup proposal, listing all of the work which he believed would be required, and estimated the cost of the same.

Defendant's initial motion argues that Jerry Black's report and opinion should be excluded

pursuant to Fed. R. Evid.  702 and *Daubert* because 1) Black is not qualified to opine concerning any aspect of gas pipeline gathering systems; 2) he is not qualified to offer the opinion that the pollution resulting from the leak is harmful to livestock and humans; 3) his proposed cleanup plan lacks sufficient detail to be reliable; 4) his opinions are inherently contradictory and thus unreliable; and 5) his opinion that Defendant violated Oklahoma Corporation Commission rules is an inadmissible legal conclusion.

Black testified that he is President of Black & Associates, an environmental consulting firm which assists in evaluating soil and water pollution and proposing remedial actions.  He has a bachelor's degree in zoology and a master's degree in environmental science.  For a number of years, he was an inspector and trainer for the Oklahoma Water Resources Board;  his duties included, *inter alia,* inspecting pipeline leaks from underground storage tanks.  Thereafter, he formed his own company and has been a consultant  for almost 30  years.

Defendant challenges that portion of Black's opinion in which he offers testimony regarding the gas pipeline gathering system operated by Defendant and his criticism of Defendant's failure to discover the leak at issue at an earlier date.  Defendant contends that the operation of a gas gathering system differs from an underground storage tank and that Black lacks the experience or training required to offer an opinion regarding Defendant's gas gathering system.  In response, Plaintiffs argue that, while employed by the Water Resources Board, Black inspected many pipelines.

During the May 29 hearing, Black testified regarding his experience.  That testimony reflects that, while he has extensive experience in matters related to pollution and the impact of leaks on groundwater, he does not have direct experience regarding the operation of gas gathering systems

15

and the monitoring of related pipelines.  Although he has inspected leaks from underground storage

tanks, the maintenance and operation of such facilities differs from gas gathering systems.  To the

extent that he intends to offer an opinion regarding the latter, the Defendant's motion is granted.

Defendant also seeks to exclude the portion of his report in which he opines that the

hydrocarbon leak on the property creates a hazard to humans.  Because Black is not a toxicologist

or medical expert, Defendant contends he is not qualified to offer that opinion.  Furthermore,

Defendant notes, Plaintiffs do not seek recovery of damages for any injury to humans or livestock;

therefore, it contends that this opinion is not relevant.

During the May 29 hearing, Plaintiffs confirmed that they do not allege that any harm or

injury to humans and/or livestock occurred as a result of the leak.  However, they contend that this

aspect of Black's opinion is relevant because the known carcinogenic impact of benzene may affect

the value of the land to a potential purchaser.

The Court concludes that  experience or education in toxicology or a medical field is not

required for a witness to generally state that benzene is a known carcinogen; its carcinogenic effect

is well known to the public.   However, Black is not qualified and cannot testify as to details

regarding the scientific information underlying that known fact.   Although Plaintiffs do not claim

any harm to humans or livestock as a result of the leak at issue, to the extent that there is evidence

that benzene remains in the groundwater, the general statement that it is a known carcinogen is

admissible.  Limited accordingly, the testimony will be permitted, and Defendant's motion is denied

to that extent.

Defendant next contends that Black's cleanup plan lacks sufficient detail to be reliable and

admissible.  As Defendant points out, the original cleanup plan submitted as a part of Black's initial report consists of a one-page list of Black's recommended remedial actions, the cost of each item of work, and the total cost.    Plaintiffs' response argues that the lack of detail does not render the plan inadmissible but goes to the weight of the evidence.

The Court agrees with Plaintiffs that any deficiencies in the plan prepared by Black do not render it inadmissible under Fed. R. Evid. 702.  As discussed in connection with Plaintiffs' challenge to portions of Reed's testimony, such deficiencies go to the weight of the evidence and should be the subject of cross-examination.  *See Daubert*, 509 U.S. at 596; *Robinson*, 16 F.3d at 1090. Defendant's motion is denied as to this issue.

Defendant next contends that a portion of Black's testimony states an improper legal conclusion; specifically, Defendant challenges his statement that Defendant violated Oklahoma Corporation Commission ("OCC") rules by allowing the property at issue to become polluted. Plaintiffs contend that Black's reference to specific OCC rules which were allegedly violated is not a legal conclusion but is merely an observation of an obvious fact.

"In presenting his opinion, an expert cannot be  permitted to define the law of the case." *Specht v. Jensen*, 853 F.2d 805, 810 (10th Cir.1988). "This rule is not, however, a *per se* bar on any expert testimony which happens to touch on the law; an expert may be 'called upon to aid the jury in understanding the facts in evidence even though reference to those facts is couched in legal terms.'" *Smith v. Ingersoll-Rand Co.*, 214 F.3d 1235, 1246 (10th Cir.2000), *quoting Specht,* 853 F.2d at   809.  Expert testimony on legal issues "crosses the line between the permissible and impermissible when it 'attempt[s] to define the legal parameters within which the jury must exercise

its fact-finding function.'" *Smith*, 214 F.3d at 1246, *quoting Specht,* 853 F.2d at 809-10.

Black cannot testify in a manner that purports to instruct the jury that Defendant has violated rules or regulations; if alleged violations are at issue, they may be a proper subject for jury instruction. Because Black's testimony regarding OCC regulations was not specifically addressed during the May 29 hearing, it is not clear whether that testimony constitutes an impermissible legal opinion. The parties' arguments in this case suggest that there will be some evidence regarding the OCC and its role in cleanup operations; for example, Defendant has noted that its cleanup activities required OCC approval.   To the extent that the OCC regulations are designed to prohibit pollution resulting from gas pipeline leaks and the OCC must approve the cleanup of such pollution, the OCC regulations or requirements may be relevant in this case. However, the parties are admonished that the Court will not permit a witness to offer an opinion that, in effect, instructs the jury on a legal issue. If Black intends to offer this testimony at trial, Plaintiffs' counsel must provide advance notice to the Court of same so that this matter may be considered in the context of the trial testimony and a ruling made outside the presence of the jury.

2) Dr. Robert Knox:

Defendant does not challenge the qualifications of Dr. Knox; it argues that, because Dr. Knox's report and conclusions are almost identical to those of Black, his testimony should be excluded for the same reasons it challenges Black's testimony. Defendant's primary focus, however, is the contention that Dr. Knox's testimony is cumulative and must be excluded on that basis.

Dr. Knox is Director of Civil Engineering and Environmental Science at the University of

Oklahoma.  He is an environmental engineer and is also co-owner of a consulting firm, Surbec, which is  engaged in remediation of ground water contamination and has been involved in remediation projects throughout the United States.  At the May 29 hearing, Dr. Knox testified that he has conducted extensive research in the areas of groundwater contamination and the movement of contaminants.  The University of Oklahoma is the location of a national center designed to study these issues.

Dr. Knox's initial report expressly states that it adopts the findings and conclusions of Jerry Black.  Dr. Knox  testified that he relied on the report of Black in preparing his own report and opinion.  According to Dr. Knox,  Black completed soil tests and other field work; Dr. Knox reviewed the results of the field work and Black's expert report, and  he agreed with Black's findings and conclusions in the initial report.

To the extent that Defendant challenges Black's report for lack of specificity or incompleteness, it also asserts those challenges to Dr. Knox's report because he adopts Black's findings and conclusions.  Because the Court has determined that the alleged deficiencies in Black's report go to the weight of the opinion  rather than its admissibility, the same ruling applies to Dr. Knox's opinion.   Thus, to that extent, the Defendant's motion must be denied.

However, the Court agrees that, to the extent Dr. Knox's report duplicates the report of Black, his  report and related testimony should be excluded as cumulative.  Relevant evidence may be excluded if its admission would result in "needless presentation of cumulative evidence."  Fed. R. Evid. 403.  This rule applies to cumulative expert testimony.  *See United States v. Arney*, 248 F.3d 984, 990-91 (10th Cir. 2001); *Wilson v. Merrell Dow Pharmaceuticals, Inc.*, 893 F.2d 1149,

1151 (10th Cir. 1990).

After review and comparison of the reports prepared by Black and Dr. Knox, the Court concludes that they are cumulative to some extent.  At the May 29 hearing,  the Court asked Dr. Knox to focus  his testimony on the portions of his report which presented conclusions and opinions which were not addressed by Black.  His testimony reflects that Dr. Knox discussed some topics in his report which were not addressed by Black.  Those are a discussion of surfactants and the related remediation process, a discussion of methods to remove contaminants in the subsurface, and the volumetric calculation showing the estimated rate of flow from the pipeline at issue.  Defendant suggests, however, that these first two topics were not addressed in his initial report or his supplemental report.

Plaintiffs argued at the May 29 hearing that the volumetric calculation included in Dr. Knox's report does not duplicate Black's opinion; they argue that this calculation is important to the jury's understanding of the extent to which the contamination allegedly spread and the resulting cost of remediation.  Defendant challenges the relevance of this opinion on the grounds that the calculation does not take into account that the pipeline is a gas pipeline and, therefore, would not have been filled with fluid as Dr. Knox has assumed.   Plaintiffs  argue that Dr. Knox's report includes a discussion in Part 6 regarding the escape of fluid and the flow of subsurface fluids and that Black did not include these topics in his report.  Plaintiffs also contend that the supplemental report of Dr. Knox contains this additional information.

The Court concludes that Defendant's motion to exclude cumulative testimony contained in Dr. Knox's report should be granted pursuant to Fed. R. Evid. 403, as Dr. Knox expressly adopts

and incorporates the same findings and conclusions set forth in Black's opinion.   This does not, however, compel exclusion of all  the opinions contained in Dr. Knox's reports[3]; he may testify regarding those matters which are in addition to those set forth in  Black's report.  Plaintiffs are cautioned, however, to avoid any presentation of cumulative testimony as between Black and Dr. Knox.

B. Supplemental motion :

In response to the April 2008 supplemental reports of Black and Dr. Knox, Defendant  filed a supplemental motion [Doc. No. 168] reiterating the arguments in the initial motion. With respect to Black's opinion, Defendant presents additional argument and authority regarding the soil samples on which he relied, contending that his samples do not cover a sufficient area to support his conclusion that contamination was extensive.  Although Defendant's argument is persuasive, it does not present a sufficient basis for rendering the Black report inadmissible as unreliable.  Instead, the deficiencies in his methodology should be the subject of cross-examination, as they impact the weight of Black's testimony.

Defendant also challenges Black's supplemental report as containing calculation errors; these were addressed during Black's testimony at the May 29 hearing.  The parties advised the Court that Black conceded that his supplemental report contained errors; he corrected those errors, and the parties submitted the corrected report at the hearing.  To the extent that Defendant seeks exclusion of the supplemental report based on Black's calculation errors, the motion must be denied.  Black's errors  do not render the report inadmissible, although they may impact the weight of his testimony.

_____

[3]*Although Knox's supplemental report was not attached to any of the briefing of the parties, it was submitted to the Court at the hearing, and the Court notes that it goes beyond the scope of Black's reports in several ways.*

Defendant is free to point out those errors during Black's testimony at trial and cross-examine him as to the accuracy of his calculations.

In addressing the supplemental report of Dr. Knox, Defendant reiterates its arguments regarding the cumulative nature of his report and testimony.   As noted above, the Court will not permit cumulative expert testimony; however, Dr. Knox can testify regarding those topics which do not simply reiterate the conclusions of Black.

Defendant's motion to exclude the initial report of Black and Dr. Knox  [Doc. No. 45] is granted in part and denied in part, as set forth above.  With respect to the motion directed at their supplemental reports  [Doc. No. 168], the same ruling applies.   Defendant's motion seeking exclusion of Dr. Knox's report on the grounds that it is cumulative and must be excluded under Fed. R. Evid.  403  [Doc. Nos. 45 and 168] is also granted in part, as set forth above.

VI.  The parties's motions to exclude the opinions of the real estate appraisers:

A.  Plaintiffs' motion to exclude the report and testimony of Kim Allen:

Plaintiffs' additional motion [Doc. No. 51] seeks to exclude the opinion and testimony of Defendant's expert, Kim Allen, a real estate appraiser who will testify regarding the value of the property at issue before and after the pipeline leak.  Plaintiffs argue that Allen's opinion is speculative and unreliable because it is based  on the assumption that Defendant will clean up the property and because his method of valuation is based on temporary, rather than permanent, injury to the land.

Although Plaintiffs' motion is based on the contention that the injury in this case is permanent, their experts' testimony at the May 29 hearing reflects the view that the injury is

temporary in that remediation is anticipated.  The issue is to what extent additional remediation is required and at what cost.  Thus, to the extent that Plaintiffs contend Allen's calculation should be based on a permanent injury, their motion is denied.  To the extent that the motion argues Allen improperly relied on the anticipation that Defendant would engage in cleanup activities, the motion is also denied.  The testimony at the May 29 hearing shows that some activities have been undertaken; that Plaintiffs may disagree about the propriety or success of those efforts does not render Allen's belief speculative or unreliable.  Any deficiencies in his methodology or calculations go to the weight of his testimony rather than to its admissibility, and Plaintiffs are free to explore the same in cross-examination at trial.

B. Defendant's motion to exclude the report and testimony of Jim Artman:

Defendant's initial motion [Doc. No. 44] sought exclusion of the report and testimony of Plaintiffs' real estate appraiser,  Jim Artman.  The motion reflects that, similar to the arguments asserted by Plaintiffs in their effort to exclude Kim Allen, Defendant's challenge to Artman's testimony goes to its weight rather than to its admissibility.  Defendant argues that he employed incorrect standards and did not utilize proper criteria in selecting properties as examples of comparable values.   Defendant's supplemental motion regarding Artman is included in its supplemental motion challenging the testimony of Black and Dr. Knox  [Doc. No. 168].  Its arguments in that motion also go to the weight of Artman's testimony.  Defendant's motion and supplemental motion regarding Artman are thus denied.

During the May 29 hearing, the parties also advised the Court that Black's revised supplemental report has increased his estimate of the costs of remediation from approximately

$470,000 to more than $750,000.   Defendant suggested that this will impact the calculation of any damages for the harm done to the property.

The parties' arguments during the hearing reflect that any impact resulting from Black's revised calculations does not affect the admissibility of the real estate appraisers' testimony. Instead, any issue regarding  recoverable damages for the injury to the property is a matter to be decided in connection with the jury instructions.   Therefore, the parties's motions [Doc. Nos. 44 and 51] are denied.   To the extent this ruling impacts the jury instructions previously submitted by the parties, they are authorized to submit revised instructions on this issue only no later than Monday, June 9, 2008.

V.  Plaintiffs' motion to strike David B. Vance as an expert witness:

The final motion at issue is Plaintiffs' motion [Doc. No. 159] to strike David B. Vance as an expert witness on behalf of Defendant.  Plaintiffs do not challenge Vance's qualifications or the substance of the expert report he prepared; instead, they contend that he must be excluded pursuant to Fed. R. Civ. P. 37 because he was not timely disclosed as an expert witness.  Plaintiffs contend that his report, which contains an expert opinion on the process of bioremediation and its effect on the contaminants at issue in this case, is highly technical and beyond the expertise of their existing expert witnesses.  Plaintiffs contend that, because Vance was not listed as an expert by the original April 4, 2005 deadline in the scheduling order, his disclosure was untimely.

Defendant named Vance as an additional witness and submitted his report on the April 4, 2008 deadline for submitting supplemental expert reports.   Vance is an associate of Arcadis, the company co-owned by Defendant's expert, A. Joseph Reed.  During Reed's June, 2005 deposition,

he identified Vance as the colleague who assisted Reed in reviewing the soil data with regard to considering whether bioremediation had occurred in this case. Reed testified that he consulted with Vance at the time. At the May 29 hearing, Reed also testified that it is his practice to rely on Vance and others affiliated with Arcadis to obtain their specific expertise with regard to applicable aspects of a remediation project.

Defendant states that Vance was not named as an expert by the April 4, 2005 deadline because, at that time, the issue of bioremediation had not been raised. When the May 2005 test results were reviewed by Reed, he determined that bioremediation could be an issue. However, Defendant states that it was not until Reed reviewed the test samples in March 2008 that he determined the evidence established that bioremediation had, in fact, occurred with respect to this property. During the May 29 hearing, Defendant's counsel stated in oral argument that Reed advised that, based on the results he reviewed, he believed it would be necessary to have an additional expert with knowledge of biochemistry and related fields to explain how the test results reflect bioremediation has, in fact, occurred in this case. He recommended the addition of Vance, who has academic credentials in biochemistry and related fields as well as practical experience in bioremediation of hydrocarbon contamination, as an expert witness.

Defendant contends under these circumstances it was not aware of the need for an additional expert witness until after the recent test results were received, analyzed, and reviewed. Defendant notes that Vance was named by the April 4, 2008 deadline for supplemental expert reports and his report was submitted at that time. Therefore, his identity and his opinions were fully disclosed approximately 60 days in advance of the June 9, 2008 scheduled trial. Further, Defendant contends,

Plaintiffs had ample opportunity to depose Vance and to seek leave of Court to name their own expert witness to respond to his opinions if their existing expert witnesses were not qualified to do so. Finally, Defendant states that Plaintiffs cannot have been completely surprised by his addition as a witness, as they have been aware of his affiliation with Arcadis and his review of the 2005 data since that information was disclosed in Reed's June 2005 deposition.

Pursuant to Fed. R. Civ. P. 37, the Court must exclude an expert witness who has not been timely disclosed under Fed. R. Civ. P. 26(a), if the failure to disclose the expert is "without substantial justification," unless the failure is harmless. Fed. R. Civ. P. 37(c)(1). In this case, Defendant argues that substantial justification for the delay in naming Vance exists because the issue of bioremediation was not known to it in April 2005, the only deadline set by the Court for the disclosure of expert witnesses and their reports. Defendant contends that Vance was timely disclosed by the deadline set for supplemental expert reports.

Plaintiffs suggest that, in evaluating their motion, the Court should consider the factors set forth in *Smith v. Ford Motor Co.,* 626 F.2d 784 (10th Cir. 1980), a decision issued prior to the expert witness report revisions to Fed. R. Civ. P. 26. According to *Smith*, the Court should consider four factors to decide if an expert witness may be added after the scheduled deadline: 1) the prejudice or surprise of the party against whom the witness would testify; 2) the ability of that party to cure the prejudice; 3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or other cases before the court; and 4) the bad faith or willfulness of the party in failing to comply with the court's scheduling order. 626 F.2d at 797.

Applying these factors to this case, the Court concludes that Defendant has not acted in bad

faith or willfully defied the court's previous orders.  A review of the original 2005 expert reports reflects that  the issue of bioremediation was not fully apparent in April 2005.  Although it was raised as an issue in Reed's June 2005 report and deposition, the importance of the issue was not apparent until recent testing.  In the interim, no discovery or further action was required in this case because of the pendency of the appeal.  The Court concludes that the necessity of expert testimony on this issue did not become known to Defendant until the 2008 test results were available.

Allowing Vance to testify would be prejudicial to Plaintiffs in the absence of an opportunity to depose him and, if necessary, to add a qualified expert to respond to his testimony.  However, that potential prejudice can readily be cured by allowing Plaintiffs time to depose Vance and additional time to name their own expert witness on this subject, if desired.

This is not a case in which Defendant is attempting  at trial to call a previously undisclosed witness, as contemplated by the factors mentioned in *Smith*.  Rather, it is a case in which the passage of time has resulted in an issue  becoming more important as the case developed.   The addition of a new expert or experts will not significantly disrupt the Court's schedule, as the trial of this case can be rescheduled to permit the parties sufficient time to address this issue and prepare for trial.

Weighing the factors in light of the developments in this case, the Court concludes that Defendant has shown substantial justification for the delayed disclosure of Vance as an expert witness.   The better practice would have been for Defendant to file a motion seeking leave of Court to add a new expert; however, given the unique circumstances of this case, the Court will permit the addition of the witness.

To avoid prejudice to the Plaintiffs, the Court directs Defendant to produce David Vance for

a deposition within 14 days of this Order.    Plaintiffs shall have 14 days from the date of the completed deposition in which to name a new expert to respond to Vance's testimony and submit an expert report; if Plaintiffs elect to utilize one of their existing expert witnesses, they must notify Defendant of that decision and submit the report within the time period set forth above.   Plaintiffs' bioremediation expert, if any, must be made available for deposition within 7 days of the submission of the expert's report.    This case is hereby stricken from the  June 9, 2008 trial docket, and will be rescheduled on the July, 2008 docket[4]. Subject to these limitations, Plaintiffs' motion to strike Vance as an expert witness [Doc. No. 159] is denied.

Defendant has also advised the Plaintiffs and the Court of its intent to call Vance as a rebuttal expert witness to rebut the opinions set forth in the April 4, 2008  supplemental reports  of Plaintiffs' experts, Black and Knox.  A rebuttal report for that purpose has been prepared by Vance, and a copy was provided to the Court at the May 29 hearing.  During oral argument at the hearing, counsel for Defendant stated that, in their April 2008 supplemental reports, Dr. Knox and Black both opine that, since 2005, the groundwater contamination has spread into a larger area.    Although Reed is a hydrologist, Defendant contends he does not have the expertise to respond to Dr. Knox's opinion regarding subsurface pollution  transport issues which he offers to support the conclusion that the area of contamination is greater now than it was in 2005.  Defendant contends Vance is qualified to opine on these subjects, and he has prepared and submitted a report to rebut the opinions of Plaintiffs' experts.

As the parties are aware, the Scheduling Order in this case did not list a deadline for the

---

[4]*If issues arise in the completion of this schedule which are unforseen at this time and which require Court intervention, the case will likely be stricken from the July 2008 trial docket.*

disclosure of expert rebuttal witnesses.   The Federal Rules of Civil Procedure contemplate the use of rebuttal experts, as an express deadline is provided for their disclosure.  According to Rule 26, expert rebuttal reports must be submitted within 30 days of the other party's expert disclosure. Fed. R. Civ. P.26(a)(2)(C)(ii).  To be timely, then, the rebuttal report prepared by Vance must have been submitted no later than 30 days after the April 4 supplemental reports of Black and Dr. Knox. As Defendant points out, Vance could not have prepared a rebuttal to the supplemental reports until they were submitted.  His report was submitted to Plaintiffs within 30 days of the receipt of the supplemental reports.

The Court concludes that, given the disclosure of new opinions in the supplemental reports and the fact that Defendant's current expert does not have the expertise to respond to those opinions, Defendant may utilize Vance as a rebuttal expert.  The Court further finds that the rebuttal expert report of Vance was timely prepared and submitted to Plaintiffs.  Therefore, he will be permitted to testify in rebuttal to the new information set forth in the supplemental reports of Black and Dr. Knox.  VI. Conclusion:

For the foregoing reasons, the parties' motions challenging the admissibility of the respective expert witnesses are granted in part and denied in part.  This case is stricken from the June 9, 2008 trial docket, to be rescheduled as soon as possible after the completion of the deposition of David Vance, the Plaintiffs' subsequent disclosure of an expert witness and accompanying report in response to the opinion of Vance, and the completion of the deposition of that expert witness by Defendant.

If, after the completion of the depositions of Vance and the expert witness who may be named by

Plaintiffs,  the parties desire to file motions in limine to exclude the testimony of those two expert witnesses, they may do so no later than 10 days from the completion of the deposition of Plaintiffs' expert.

IT IS SO ORDERED this __4th__ day of June, 2008.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE

.